IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

IAN DAWES,

        Petitioner,

v.

S.E. RACETTE, Superintendent,
Great Meadow Correctional Facility,

        Respondent.

Civil Action No.
9:12-CV-0718 (NAM/DEP)

---

APPEARANCES:

FOR PETITIONER:

IAN DAWES, *Pro Se*
88-B-0326
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

FOR RESPONDENT:

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
The Capitol
Albany, NY 12224

OF COUNSEL:

THOMAS B. LITSKY, ESQ.
Assistant Attorney General

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

# REPORT AND RECOMMENDATION

*Pro se* petitioner Ian Dawes, a New York State prison inmate, has commenced this proceeding seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Dawes raises constitutional challenges to a disciplinary hearing conducted at the prison facility in which he was confined at the relevant times, leading to a partial finding of guilt and the imposition of a penalty that included the recommended loss of good time credits. Because the hearing officer's determination was vacated, in part, as a result of a state-court challenge filed by Dawes, and the portion of the sanction recommending the loss of good time credits was subsequently annulled, the hearing officer's determination that is the subject of the petition in this matter no longer has an impact upon the fact and duration of petitioner's incarceration. Accordingly, I recommend that the petition be dismissed as moot.

I.  BACKGROUND

Petitioner is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. On May 9, 2010, apparently as a result of information received from an unidentified source, corrections officers at the Sing Sing Correctional Facility, where plaintiff was being held

at the time, initiated a search of the petitioner, believing that he was concealing a razor in his mouth. Dkt. No. 1 at 2-3; Dkt. No. 10-2 at 10, 102, 138. Corrections Officer M.J. Panzarella directed petitioner to open his mouth, and, when petitioner complied, Corrections Officer Panzarella observed a "razor type weapon partially covered in black electrical tape[.]" Dkt. No. 10-2 at 10, 140. According to the misbehavior report authored by Corrections Officer Panzarella following this incident, when petitioner was instructed to release the weapon from his mouth, he broke free of the officer's grasp and attempted to flee. Dkt. No. 10-2 at 10. He was thereafter subdued and informed the officers that he had swallowed the object. *Id.* Petitioner denies this account, alleging that, after protesting that he did not have a weapon inside his mouth, "Panzarella interjected and grabbed [him] by the throat and began choking [him]." Dkt. No. 1 at 3.

Dawes was subsequently escorted to the facility's medical unit for medical assessment and a strip search. Dkt. No. 1 at 3. Corrections Officer E. Collymore claims that, during the search, she noticed a white object protruding from petitioner's rectal area. *Id.* at 4; Dkt. No. 10-2 at 12, 172-73. When petitioner was ordered to retrieve the object and provide it to corrections officers, he instead pushed the object further into his rectum. Dkt. No. 1 at 3-4; Dkt. No. 10-2 at 12, 174.

3

As a result of the events of May 9, 2010, Dawes was issued two misbehavior reports. Dkt. No. 1 at 4; *see* Dkt. No. 10-2 at 234-35. The first, authored by Corrections Officer Panzarella, charged him with engaging in violent conduct (Rule 104.11), creating a disturbance (Rule 104.13), possessing a weapon (Rule 113.10), smuggling (Rule 114.10), interference with an employee (Rule 107.10), failure to obey a direct order (Rule 106.10), and refusal to submit to a search and frisk (Rule 115.10). Dkt. No. 10-2 at 10. The second misbehavior report, issued by Corrections Officer E. Collymore, accused petitioner of refusing to obey a direct order (Rule 106.10), interfering with an employee (Rule 107.10), and refusing to submit to a search or a frisk (Rule 115.10). *Id.* at 12.

Beginning on May 21, 2010, a Tier III disciplinary hearing was conducted by Corrections Captain N. Ingenito to address the charges set forth in those two misbehavior reports.[1] Dkt. No. 10-2 at 83-126. Following the close of the hearing, Captain Ingenito issued a written determination, dated June 8, 2010. *Id.* at 217-19. With respect to the charges asserted in

---

[1] The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

Corrections Officer Panzarella's misbehavior report, Corrections Officer Ingenito found petitioner guilty only of creating a disturbance and not guilty of the remaining charges. *Id.* at 217. Turning to the misbehavior report authored by Corrections Officer Collymore, the hearing officer found petitioner guilty on all three counts of interfering with an employee, refusing to obey a direct order, and refusing to submit to a search or frisk. *Id.* at 217-18. As a result of those findings, Captain Ingenito imposed a penalty that included four months of disciplinary special housing unit ("SHU") confinement, with a corresponding loss of commissary and telephone privileges, and a further recommendation that petitioner forfeit one month of good-time credits. *Id.* That determination was upheld on appeal. *Id.* at 232.

On or about August 30, 2010, petitioner commenced a proceeding in Albany County Supreme Court, pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), challenging the results of his Tier III hearing. Dkt. No. 10-1. The proceeding was subsequently transferred to the New York Supreme Court, Appellate Division, Third Department, which issued a decision, dated September 22, 2011, affirming the determinations that found petitioner guilty of refusing a direct order and failing to comply with a search, but annulling the portion of the disciplinary hearing determination that found petitioner guilty of creating a disturbance and

interfering with an employee. Dkt. No. 10-7 at 3; *Dawes v. Venettozzi*, 87 A.D.3d 1219, 1220 (3d Dep't 2011). The Appellate Division also directed that all references to the annulled charges be expunged from petitioner's institutional records. Dkt. No. 10-7 at 4; *Venettozzi*, 87 A.D.3d at 1220. The New York Court of Appeals denied the petitioner's subsequent application for leave to appeal the Appellate Division's decision. *Dawes v. Venettozzi*, 18 N.Y.3d 803 (N.Y. 2012).

Following the issuance of the Appellate Division's decision, the matter was reviewed by the DOCCS central office, which modified the penalty imposed upon the petitioner to only three months of SHU confinement, with a corresponding loss of package, commissary, and telephone privileges. Dkt. No. 10-8 at 2. Significantly, the modified disciplinary sanction did not include any recommended loss of good time credits. *Id.*

II. <u>PROCEDURAL HISTORY</u>

Dawes commenced this proceeding by the filing of a petition dated April 24, 2012, and thereafter filed a memorandum of law in support on May 22, 2012. Dkt. Nos. 1, 5. Issue was joined by the filing of a response on behalf of the named respondent on August 24, 2012, accompanied by the relevant state court records, conveniently assembled and indexed for ease of reference, and a memorandum of law in opposition to the petition. Dkt.

Nos. 9-11. Petitioner has since filed a reply memorandum in further support of his petition. Dkt. No. 12. Dawes' petition, which is now fully briefed, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Mootness

This court's subject matter jurisdiction is limited by Article III, Section 2 of the United States Constitution to matters that present a "case or controversy." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003). A case ceases to meet the case or controversy requirement and instead becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982).

A habeas petition, including one brought pursuant to 28 U.S.C. § 2254(a), is a vehicle by which a prison inmate may challenge the "fact or duration" of his confinement.[2] *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Peralta v. Vasquez*, 467 F.3d 98, 102 (2d Cir. 2006). In this case,

---

2   Complaints by a prison inmate concerning the conditions of his confinement, on the other hand, are properly asserted in an action brought pursuant to 42 U.S.C. § 1983. *Preiser*, 411 U.S. at 499; *Peralta v. Vasquez*, 467 F.3d 98, 102 (2d Cir. 2006).

7

because the portion of the hearing officer's penalty that recommended the loss of good time credits was rescinded when the DOCCS modified petitioner's sanction following the Appellate Division's decision, the disciplinary determination now challenged has no apparent direct effect on the duration of Dawes' confinement. Dkt. No. 10-8 at 2. Accordingly, petitioner's due process claim arising from the hearing is not cognizable in a habeas proceeding pursuant to section 2254, and must be brought in a civil rights action pursuant to 42 U.S.C. § 1983.[3] *See Stallone v. Fischer*, No. 10-CV-0615, 2011 WL 5040669, at *6 (W.D.N.Y. Oct. 21, 2011) (finding

---

3    With respect to petitioner's claim that his due process rights were violated in connection with the disciplinary hearing determination when the parole board denied him parole, "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001). A petitioner's "federally[ ]protected liberty interest is limited to not being denied parole for arbitrary or impermissible reasons." *Brown v. Thomas*, No. 02-CV-9257, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003) (citing *Meachum v. Fano*, 427 U.S. 215, 226 (1976)). Although petitioner does not contend that the parole board's denial of his parole was arbitrary, he suggests that consideration of the outcome of the disciplinary hearing was impermissible. Dkt. No. 1 at 7. In New York, however, the parole board is permitted to consider, among other relevant factors, an inmate's prison disciplinary record when determining whether the inmate should be released. *Thurman v. Hodges*, 292 A.D.2d 872, 873 (4th Dep't 2002). In addition, to the extent petitioner contends that the adverse disciplinary determination negatively impacted his chances at early release and affected the duration of his confinement, such claim is without merit. The court has uncovered no authority that suggests there is a sufficient link between a negative disciplinary determination and an inmate's right to be released early from prison. *See Eichwedel v. Curry*, 700 F.3d 275, 279 (7th Cir. 2012) ("Although we presume that a criminal conviction has collateral consequences, we do not indulge in the same presumption with respect to disciplinary proceedings . . . . The best that [petitioner] can do is point to the *possibility* that he *might* have served a shorter period of incarceration . . . All he can suggest is that prison authorities *might* have seen fit to grant him a reduction in the days he had to serve. Such a deficiency is not sufficient to establish a continuing controversy between [petitioner] and [respondent]." (emphasis in original) (footnotes omitted)).

8

that, because the petitioner challenged only the fact of his disciplinary SHU confinement, rather than the duration of his confinement, his claim was not cognizable under federal habeas review);[4] *Adams v. McGinnis*, 317 F. Supp. 2d 243, 244 (W.D.N.Y. 2004) (directing petitioner to show cause why the petition was appropriately commenced pursuant to section 2254, rather than section 1983, where the allegations in the petition did not challenge the overall length of his confinement but rather asserted a due process claim based on allegations that, *inter alia*, he was denied inmate assistance in connection with the disciplinary hearing). Dawes' habeas petition, which is limited to challenging the conditions of his confinement, including the disciplinary SHU portion of the sanction imposed, should therefore be denied.

B.    Certificate of Appealability

In order for a petitioner to appeal a final order denying habeas relief by a state prisoner, he must receive a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b) ("In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court, . . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of apealability under

---

[4]    All unreported decisions cited to in this report have been appended for the convenience of the *pro se* plaintiff.

28 U.S.C. § 2253(c)."). A COA may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this instance, I conclude that the petitioner has not made a substantial showing of the denial of a constitutional right for purposes of a request for habeas relief. Accordingly, I recommend against the issuance of a COA in this case.

IV. <u>SUMMARY AND RECOMMENDATION</u>

Petitioner's claims in this matter center upon the disciplinary proceedings relating to two separate but related misbehavior reports. Since the determination resulting from those proceedings, as modified, did not result in the loss of any good time credits, and thus did not affect the fact or duration of petitioner's confinement, the claims now asserted are not properly raised in a petition pursuant to 28 U.S.C. § 2254. Accordingly, it is hereby respectfully

RECOMMENDED that the petition in this matter be DENIED in all respects; and it further hereby

RECOMMENDED, based upon my finding that Dawes has not made a substantial showing of the denial of a constitutional right, that a certificate of appealability not be issued with respect to any of the claims set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: October 22, 2014
Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Jerome STALLONE, Petitioner,
v.
Brian FISCHER, Respondent.

No. 10–CV–0615(MAT).
Oct. 21, 2011.

Jerome Stallone, Malone, NY, pro se.

Paul B. Lyons, Office of New York State Attorney General, New York, NY, for Respondent.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

### I. Introduction

*\*1* *Pro se* petitioner Jerome Stallone ("Stallone" or "Petitioner") has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 seeking review of two determinations by the Auburn Correctional Facility on March 17, 2008, following Tier III Superintendent's Hearings, recommending that a portion of Stallone's "good-time credits" be withheld. Stallone is currently incarcerated at Franklin Correctional Facility.[FN1]

> FN1. Stallone's petition does not challenge the constitutionality of his underlying convictions for Robbery in the First and Second Degrees and Reckless Endangerment in the First Degree.

### II. Factual Background and Procedural History

#### A. The Misbehavior Reports

Two "inmate misbehavior reports" were issued to Stallone at Auburn Correctional Facility on February 26, 2008, and February 27, 2008. In the first misbehavior report, Corrections Officer ("C.O.") Ball charged petitioner with possessing marijuana in violation of Prison Disciplinary Rule ("PDR") 113.25. C.O. Ball stated that during a search of Stallone's cell, he discovered what appeared to be a marijuana cigarette concealed in the pocket of a coat hidden in a bucket behind the bed. Thirty minutes later, C.O. Ball turned the substance over to C.O. Harte, who used the "NIK" drug identification test to positively identify the substance as marijuana.

On February 27, 2008, after Stallone's urine sample tested positive for "THC/50 cannabinoids," he was issued a second misbehavior report, charging him with using a controlled substance in violation of PDR 113.24.

#### B. Disciplinary Hearing Regarding the Drug Possession Charge

On March 2, 9, 11, 13, and 17, 2008, Captain B. Chuttey ("the H.O." or "the hearing officer") presided over a Tier III disciplinary hearing regarding the drug-possession violation charged in the February 26, 2008 misbehavior report. Stallone, after being advised of his rights and responsibilities, stated that he understood them and acknowledged having received everything he needed from his legal assistant to proceed. Stallone then pled not guilty to drug possession under PDR 113.25.

The H.O. heard testimony from, *inter alia*, C.O. Ball, C.O. Harte, C.O. Schramm, Sergeant Ballings, Lieutenant Koziol, and Captain McCarthy. The officers testified that the search of Petitioner's cell was authorized based upon confidential information received by Captain McCarthy that Petitioner possessed contraband. The H.O. precluded Petitioner from questioning Captain McCarthy regarding the source of the confidential information, stating that he had already "received testimony from [Captain McCarthy] on confidential information about this."

Petitioner asked the H.O. to assess the reliabil-

ity of the confidential information, and provided several questions for that purpose. The H.O. responded that he had already evaluated the confidential information, and that the questions Petitioner had submitted were typical of those employed in conducting such an evaluation. The H.O. also observed that the "threshold ... to authorize the cell frisk is reasonable belief," which is "a low threshold."

***2** Based on the misbehavior report, the positive drug test result, and the hearing testimony, the H.O. found Petitioner guilty of possessing a controlled substance in violation of PDR 113.25. The H.O. concluded that "[i]t appear[ed] proper authorization was given to conduct the cell frisk based upon information received by staff," and that he had "heard confidential[ ] ... testimony on tape," which he found credible. The H.O. imposed a penalty of 12 months of confinement in a Special Housing Unit ("SHU") and 36 months of loss of privileges. Finally, the H.O. recommended the loss of 24 months of "good time" credits.

On administrative appeal, Petitioner's SHU confinement was reduced to six months, and the loss of privileges and recommended loss of good time were both reduced to 12 months.

**C. Disciplinary Hearing Regarding the Drug Use Charge**

On March 3, 11, 13, and 17, 2008, the same H.O. presided over a separate Tier III disciplinary hearing regarding the drug-use violation charged in the February 27, 2008 misbehavior report. Testimony was received from, *inter alia,* Physician's Assistant Laux, C.O. Carbonaro, C.O. Schramm, C.O. Brown, Sergeant Ballings, Lieutenant Koziol, and Steve Grimmell.

Stallone asserted that at the time of the drug test, he had been taking Percogesic, an anti-inflammatory drug which, he claimed, resulted in "false positive" results in marijuana tests. However, Steve Grimmell, a technical specialist employed at Syva Company,FN2 the manufacturer of the urine-testing equipment, testified that the "cannabinoid based drugs" were the only known substances to test positively for marijuana, and that Percogesic would not be expected to cause a false positive.

> FN2. *See Peranzo v. Coughlin,* 850 F.2d 125, 126 (2d Cir.1988) (stating that drug-test results obtained with "Syva Company's EMIT-st urinalysis drug detection kits ... may be relied upon as sufficient evidence to warrant prison discipline").

At this hearing, Petitioner elicited testimony regarding the confidential information that precipitated his cell search. When the H.O. invited Petitioner to call Captain McCarthy to testify regarding the confidential information, but Petitioner declined based on the H.O.'s assurance that he would "do an independent evaluation of the credibility of this information received ...."

At the conclusion of the hearing, he H.O. found Petitioner guilty of using marijuana in violation of PDR 113.24, based upon on the misbehavior report, the positive urinalysis test results, and the hearing testimony. The H.O. noted that he had "taken testimony on the confidential information and found it to be reliable to authorize the urine test that ha[d] shown to be positive." He imposed a penalty of 12 months of confinement in SHU and 36 months of a loss of privileges, and recommended a loss of 24 months of good time credits.

Petitioner's administrative appeals were unsuccessful. Petitioner then proceeded to exhaust his claims by means of New York Civil Practice Law & Rules ("CPLR") Article 78 petitions. In Albany County Supreme Court, he challenged the administrative determination that he had violated PDR 113.25 by possessing marijuana. Petitioner claimed, among other things, that (1) his due process rights were violated because "no written or oral reason was given as to why the petitioner could not ask the hearing officer ... to ask the alleged unidentified confidential informant general questions which concerned the credibility [and] reliability of the al-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

leged informant"; and (2) the hearing officer was biased.

**\*3** On the same day the Albany County Article 78 petition was filed, Stallone also filed an Article 78 petition in Cayuga County Supreme Court challenging the administrative determination that he had violated PDR 113.24 by using marijuana. Petitioner claimed, among other things, that (1) he was improperly denied the right to question the confidential informant; and (2) the hearing officer was biased.

Cayuga County Supreme Court transferred Petitioner's Article 78 proceeding to Albany County Supreme Court, which then consolidated the two actions. On December 10, 2008, the Albany County Supreme Court transferred the consolidated matter to the Appellate Division, Third Department because the matter raised "a question of substantial evidence."

On September 17, 2009, the Appellate Division issued a Memorandum and Judgment unanimously confirming both administrative determinations. *Stallone v. Fischer,* 65 A.D.3d 1410, 885 N.Y.S.2d 230 (App.Div.3d Dept.2009). The Appellate Division found that "[s]ubstantial evidence, in the form of the misbehavior reports, the positive test results and the hearing testimony of the authors of said reports and other correction officers, support the determinations finding petitioner guilty of drug possession and drug use." 65 A.D.3d at 1410, 885 N.Y.S.2d 230 (citations omitted). As for "petitioner's procedural arguments," the court found that petitioner "was not entitled to question the confidential informants." *Id.* (citations omitted). The court also rejected petitioner's contention "that the Hearing Officer was required to assess the veracity of the confidential informants," "because the determinations of guilt rested upon the discovery of marihuana in his cell and his positive drug test, respectively, and not from the confidential information" *Id.* Moreover, the court's "review of the record reveal[ed] no evidence of hearing officer bias or that the determinations flowed from such alleged bias." *Id.* at 1410–11, 885 N.Y.S.2d 230 (citations omitted). Finally, the court found "petitioner's remaining contentions ..., to the extent preserved, ... to be unavailing." *Id.* at 1411, 885 N.Y.S.2d 230.

The New York Court of Appeals denied leave to appeal. *Stallone v. Fischer,* 13 N.Y.3d 712, 891 N.Y.S.2d 691 (N.Y.2009). Petitioner's motion for reargument was denied. *Stallone v. Fischer,* 13 N.Y.3d 935, 895 N.Y.S.2d 311, 922 N.E.2d 900 (N.Y.2010).

**D. The Federal Habeas Petition**

Petitioner then timely filed a *pro se* habeas corpus petition. Respondent concedes that Petitioner has fully exhausted all of his claims by raising them on federal constitutional grounds in his Article 78 petitions and by appealing the petitions' dismissal to the Appellate Division and the New York Court of Appeals. For the reasons that follow, the petition is dismissed.

**III. Discussion**

**A. Denial of the Right to Call Witnesses**

It is well-settled that a prisoner charged with violating a prison regulation which could result in the loss of "good time" credit is entitled to minimal due process protections-the right to advance written notice of the claimed violation and to a written statement by the fact finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell,* 418 U.S. 539, 563–65, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *accord Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

**\*4** Stallone claims that his due process rights were violated at the Tier III disciplinary hearings regarding the drug-possession and drug-use charges because he was denied the right to question the confidential informant, which he claims was a violation of Title 7, N.Y. COMP. RULES & REGS., § 254.5(a) [FN3] and due process.

FN3. The prison regulations in New York

which grant the inmate a conditional right to call witnesses, provided that the testimony is material, is not redundant, and doing so does not jeopardize institutional safety or correctional goals. 7 N.Y. CODE R. & REGS . § 254.5(a). Section 254.5(a) further provides that if such a request is denied, the Hearing Officer shall give the inmate a written statement of the reasons for the denial, including the specific threat to institutional safety or correctional goals presented. This notice was suggested by the Supreme Court but not required as a matter of due process. *Laureano v. Kuhlmann,* 75 N.Y.2d 141, 147, 551 N.Y.S.2d 184, 550 N.E.2d 437 (N.Y.1990) (citing *Wolff v. McDonnell,* 418 U.S. at 566; *Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553). The regulation also grants the inmate the conditional right to be present when his witnesses testify, subject to the same terms. 7 N.Y. COMP. R. & REGS. § 254.5(b).

As an initial matter, a violation of a State administrative rule such as Title 7, N.Y. COMP. RULES & REGS., § 254.5(a) does not present a cognizable Federal constitutional question. Moreover, the denial of the opportunity to call a confidential informant does not run afoul of Federal due process principles, as the inmate's right to call witnesses may be circumscribed for reasons pertaining to institutional and individual safety. *See Wolff v. McDonnell,* 418 U.S. at 562 ("Retaliation is much more than a theoretical possibility; and the basic and unavoidable task for providing personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.").

In any event, as a matter of New York evidentiary law, inmates are not permitted to question confidential informants at prison disciplinary hearings. *E.g., Shannon v. Goord,* 282 A.D.2d 909, 910, 726 N.Y.S.2d 151 (App.Div.3d Dept.2001) ("Inasmuch as 'an inmate does not have a constitutional right to cross-examine adverse witnesses at a disciplinary hearing', and because an 'important channel of information would obviously be impaired if prison investigators were unable to assure their informants complete confidentiality', petitioner's right to call witnesses was not violated by the denial of his request to call the informants whose identities remained confidential to protect them from retaliation[.]") (citing *Matter of Laureano v. Kuhlmann,* 75 N.Y.2d at 147–148, 551 N.Y.S.2d 184, 550 N.E.2d 437; internal citation omitted).

Stallone has established neither an error of State law nor an error of Federal constitutional magnitude. Accordingly, his claim pertaining to the denial of his request to call the confidential informant is dismissed.

**B. Failure of Hearing Officer to Assess the Confidential Informant's Credibility**

Stallone asserts that the hearing officer denied him his due process rights by failing to allow him to submit questions to the confidential informant so as to assess his veracity. The Appellate Division held that the hearing officer was not required to do so "because the determinations of guilt rested upon the discovery of marihuana in his cell and his positive drug test, respectively, and not from the confidential information[.]" *Stallone,* 65 A.D.3d at 1410, 885 N.Y.S.2d 230 (citations omitted). It is well-settled New York law that where a hearing officer's determination of an inmate's guilt is not based upon the confidential information which prompted the request for urine sample, the hearing officer is not required to assess the credibility of the confidential informant. *E.g., Mitchell v. Selsky,* 252 A.D.2d 639, 640, 675 N.Y.S.2d 197 (App.Div.3d Dept.1998) ("[I]t was unnecessary for the Hearing Officer to assess the reliability of the confidential informant inasmuch as the determination of petitioner's guilt was not dependent upon the confidential information but merely provided the suspicion prompting

the request for petitioner's urine sample[.]") (citing *Matter of Brown v. Coombe,* 241 A.D.2d 644, 660 N.Y.S.2d 87, 88; *Matter of Shaffer v. Hoke,* 174 A.D.2d 787, 789–790, 571 N.Y.S.2d 117); 7 N.Y. CODE R. & REGS. § 1020. 4(a) (1)(iii) (setting forth procedure for urinalysis testing of inmates).

**\*5** This rule is not inconsistent with due process. The Supreme Court has held that because confrontation and cross-examination "present greater hazards to institutional interests", such matters are left "to the sound discretion of the officials of state prisons ." *Baxter,* 425 U.S. at 321 (citing *Wolff,* 418 U.S. at 567, 569). Confrontation and cross-examination "stand on a different footing [than, *e.g.,* the limited right to call witnesses] because of their inherent danger and the availability of adequate bases of decision without them." *Baxter,* 425 U.S. at 322 (citing *Wolff,* 418 U.S. at 567–68). Here, as the Appellate Division found, there was an "adequate bas[i]s of decision[,]" *Baxter,* 425 U.S. at 322, without the confidential informant's testimony. Stallone has not demonstrated that he was denied a right guaranteed to him under due process principles.

In any event, the hearing officer stated on the record that he had posed questions similar to those suggested by Stallone and had determined that the informant was credible. Stallone has not provided no basis for concluding that the hearing officer abused his discretion.

### C. Judicial Bias

Stallone claims that "[t]he Hearing Officer was not fair or impartial; he repeatedly stated throughout the hearing(s) that petitioner was guilty because the sergeant said so. This was because the hearing officer trained the sergeant, and they were buddies." Pet., ¶ 12. The Appellate Division's "review of the record reveal[ed] no evidence of hearing officer bias or that the determinations flowed from such alleged bias." *Stallone v. Fischer,* 65 A.D.3d at 1410–11, 885 N.Y.S.2d 230 (citations omitted).

To establish that a judge has engaged in misconduct sufficient to warrant redress, a party must typically demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The impartiality required of prison officials does not rise to the level of that required of judges generally, and "[i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir.1996). Rather, due process requires that the hearing officer be sufficiently impartial so as not to present a "hazard of arbitrary decisionmaking." *Wolff,* 418 U.S. at 571.

Stallone points to several remarks by the hearing officer which he claims demonstrate bias. For example, he argues that the hearing officer improperly stated, before all of the testimony had been heard, that "inmate Stallone was found guilty of 113.24 for where he had a dirty urine sample tested positive for cannabinoids." Resp't Ex. K at 23. When this misstatement was brought to the hearing officer's attention, he corrected himself, stating, "Oh, I'm sorry ... I didn't mean it like that," and clarified that he meant to say that Stallone was charged with having had a positive urinalysis test. *Id.* at 24. Stallone also asserts that the hearing officer exhibited bias by asking Sergeant Ballings if he recalled the charge of "dirty urine" in the misbehavior report. The hearing officer was not indicating his own opinion regarding Petitioner's guilt or innocence, but rather was simply reminding the sergeant of the substance of the disciplinary charge. On this record, the Appellate Division fairly concluded that there was no basis for finding predisposition or bias on the part of the hearing officer.

### D. Imposition of Confinement in a Special Housing Unit

**\*6** Stallone appears to challenge part of the punishment meted out by the hearing officer-confinement in SHU. To obtain a federal writ of

habeas corpus, a state prisoner must show that he or she is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *see also Peralta v. Vasquez,* 467 F.3d 98, 102 (2d Cir.2006).

The Fourteenth Amendment's Due Process Clause protections apply to determinations affecting duration of confinement because an inmate's liberty interest is implicated. *Wolff v. McDonnell,* 418 U.S. at 556–57. Thus, a disciplinary conviction that results in the loss of good-time credits is equivalent to a loss of a "shortened prison sentence." *Id.*. Habeas corpus is the appropriate vehicle in which to challenge a disciplinary proceeding that results in the loss of good time credits. *Preiser,* 411 U.S. at 500 (holding that § 2254 is the "sole remedy for a prisoner's challenge to revocation of good-time credits"). However, because these protections do not apply to mere changes in the *conditions* of confinement, the SHU confinement claim as not cognizable. See *Wolff,* 418 U.S. at 557. Stallone's claim regarding SHU, which challenges a change in the conditions of confinement rather than the duration of his confinement, is not cognizable on federal habeas review. *Accord, e.g., Torres v. Superintendent of Upstate Corr. Fac.,* No. 01 Civ. 1337, 2007 WL 603402, at *3 (N.D.N.Y. Feb.23, 2007); *Adams v. McGinnis,* 317 F.Supp.2d 243, 244 (W.D.N.Y.2004). Petitioner's claim with respect to his placement in SHU is dismissed.

**IV. Conclusion**

For the reasons stated above, Jerome Stallone's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal *in forma pauperis.*

**SO ORDERED.**

W.D.N.Y.,2011.
Stallone v. Fischer
Not Reported in F.Supp.2d, 2011 WL 5040669 (W.D.N.Y.)

END OF DOCUMENT



Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Carlos BROWN, Petitioner,
v.
Gail THOMAS, Acting Superintendent, Mid–Orange Correctional Facility, and Brion Travis, Chairman, New York Division of Parole, Respondents.

No. 02 Civ. 9257(GEL).
March 10, 2003.

*OPINION AND ORDER*

LYNCH, J.

**\*1** Petitioner Carlos Brown, an inmate at New York State's Mid–Orange Correctional Facility, was convicted of first-degree manslaughter in 1991, and sentenced to eight and a third to twenty-five years in prison. He has thrice been denied parole, most recently in October 2001. Brown's administrative appeal of the parole decision was denied, and he now seeks a writ of habeas corpus in this Court. Brown argues that his rights to due process and equal protection have been violated by what he claims is an arbitrary and irrational decision to deny him parole.

Respondents begin by arguing that this Court should decline to reach the merits of Brown's argument, because he has failed to exhaust his remedies by seeking review of his parole denial in the state courts. Brown responds, however, that state court review would be futile, that is, that "circumstances exist that render such process ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B)(ii). He points out that the heart of his claim is that he is being denied parole not based on failure to rehabilitate himself, but because the Parole Board, in response to gubernatorial policy, refuses to grant early parole to inmates convicted of violent crimes. The only remedy available on a state court review of parole determinations, however, is a new hearing by the parole board. *See, e.g., Lichtel v. Travis,* 731 N.Y.S.2d 533, 534–35 (3d Dept.2001); *Quartararo v. N.Y.S. Division of Parole,* 637 N.Y.S.2d 721, 721–22 (1st Dept.1996). Since his entire claim is premised on the assertion that the Parole Board is determined to reject his claim regardless of the merits, based on what he contends are inappropriate criteria, the conventional New York system of judicial review would appear to offer him no prospect of relief at all.

The Court need not address this argument, which another judge of this Court has characterized as "potentially powerful." *Defino v.. Thomas,* No. 02 Civ. 7413(RWS), 2003 WL 40502, at \*3 (S.D.N.Y. Jan. 2, 2003). As so often in habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit. Since Brown's petition can easily be rejected on the merits, requiring submission of that petition to the state courts, with the likelihood that the same arguments will eventually be presented here in any event, would be a waste of the resources of both the state and federal courts.

Petitioner's due process claim is that there is no evidence to support the Parole Board's determination that he should remain in confinement. (Pet.Mem.12–13.) It is well established that the New York parole system does not "create [ ] in any prisoner a legitimate expectancy of release." *Barna v. Travis,* 239 F.3d 169, 171 (2d Cir.2001). Thus, petitioner's federally-protected liberty interest is limited to not being denied parole for arbitrary or impermissible reasons. *See Meachum v. Fano,* 427 U.S. 215, 226 (1976).

**\*2** Contrary to petitioner's assertions, New York law specifically rejects the notion that an inmate is entitled to release based on his exemplary institutional record, commendable participation in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

rehabilitative and vocational programs, and sincere remorse. Rather, the parole statute specifically provides that

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.

N.Y. Exec. L. § 259–i(2)(c)(A). While such factors as the inmate's institutional record and release plans must be considered by the Board, *id.* § 259–i(2)(c)(A)(i) & (iii), the passage quoted above makes clear that the "seriousness of [the inmate's] crime" is also considered relevant both to the likelihood that the inmate will not be a danger to the community and to the independent requirement that early release not "deprecate the seriousness of his crime so as to undermine respect for law."

Moreover, New York law is clear that where the record "demonstrates that the Parole Board considered the relevant statutory factors, including petitioner's record in prison and postrelease plans, before concluding in its discretion that, due to the serious and violent nature of the crime and petitioner's other violent conduct, petitioner is not an acceptable candidate for release on parole," reliance on the nature of the inmate's crime to deny parole is entirely consistent with the criteria laid down by the legislature. *Thurman v. Hodges,* 739 N.Y.S.2d 324, 324 (4th Dept.2002). Here, the record reveals that the Board considered petitioner's submissions concerning his rehabilitation and post-release plans (Danburg Aff. Ex. A at 9–10), but nevertheless decided that, in view of the nature of his offense, his "release at this time would represent a threat to public safety." (*Id.* at 12.) Thus, accepting for the sake of argument Brown's assertion that he "has satisfied all rehabilitative goals set for him" (Pet.¶ 10), and his claim that he was denied parole principally because of the nature of the crime with which he is charged, the Board was fully entitled to determine that the nature of the crime outweighed the positive aspects of his record. *Cf. Defino,* 2003 WL 40502, at *4 ("the Board looked to the severity of Defino's offense, his drug use and possession of an illegal weapon as well as Defino's 'positive programming and community support,' and it determined that the former outweighed the latter").

Brown's equal protection claim fares no better. This argument, in tension with his first argument that the Board applied an inflexible and impermissible policy of denying parole to inmates based on their offense of conviction, asserts that the Board in fact *has* granted parole to offenders convicted of first-degree manslaughter, but arbitrarily rejected Brown's application. But Brown's petition and supporting papers are insufficient to establish a denial of equal protection. He does not claim that the Board acted on the basis of any suspect classification or invidious motive. Brown simply asserts that three others convicted of manslaughter have been released on parole, including individuals whose prior records were worse than his. But the number and variety of factors bearing on the seriousness of the underlying offense and the likelihood that an offender will be a danger to the community make it impossible to conclude, on the basis of the sketchy data presented, that petitioner has been singled out from among all homicide offenders for disparate treatment. To establish such a claim that a party constitutes a "class of one," singled out for arbitrary mistreatment from others similarly situated, petitioner must show that he was similarly situated to others and received different treatment from them, and was subjected to "irrational and wholly arbitrary acts" and "intentional disparate treatment." *Giordano v. City of New York,* 274 F.3d 740, 751 (2d Cir.2001). As the *Defino* case demonstrates, Brown is not the only first-degree manslaughter offender to be denied parole, 2003 WL 40502, at *4, and Brown himself argues that such denial is the rule rather than the exception. There is

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

thus no basis to conclude that he was invidiously treated.

***3** Petitioner has shown no violation of constitutional rights in the Board's decision to deny him parole. Accordingly, the petition must be denied. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

SO ORDERED.

S.D.N.Y.,2003.
Brown v. Thomas
Not Reported in F.Supp.2d, 2003 WL 941940 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.